40 N.J. Super. 309 (1956)
123 A.2d 25
NEW JERSEY HIGHWAY AUTHORITY, PLAINTIFF,
v.
J. & F. HOLDING CO., A NEW JERSEY CORPORATION, ROBERT GOLDSTEIN AND GASKEL GOLDSTEIN, DEFENDANTS-RESPONDENTS, AND ROYAL ENGRAVING CO., INC., A NEW JERSEY CORPORATION, AND ATLAS PLUMBING SUPPLY CO., A NEW JERSEY CORPORATION, DEFENDANTS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued May 14, 1956.
Decided May 31, 1956.
*312 Before Judges CLAPP, JAYNE and FRANCIS.
Mr. Richard Yale Feder argued the cause for appellant Royal Engraving Co., Inc. (Mr. Frank W. Shershin, attorney).
Mr. Robert E. Pollan argued the cause for appellant Atlas Plumbing Supply Co.
Mr. Murray A. Laiks argued the cause for respondents (Messrs. Heller & Laiks, attorneys).
The opinion of the court was delivered by JAYNE, J.A.D.
A prefatory introduction to this decision is appropriate to explain that the New Jersey Highway Authority, pursuant to the legislative power conferred upon it, acquired by eminent domain the designated parcel of land and the commercially used building situate thereon known as No. 401 Lakeview Avenue in the City of Clifton. Its acquisition was required in the construction of the Garden *313 State Parkway. The compensatory award was in the sum of $60,000.
The owners in fee of the premises were Robert Goldstein and Gaskel Goldstein (the defendant J. & F. Holding Co., the former owner), and the tenants were Royal Engraving Co., Inc., and Atlas Plumbing Supply Co. The owners and tenants were unable amicably to agree upon a distribution among themselves of the proceeds of the award, hence the plaintiff augmented its initial deposit of $54,000 previously made with the clerk of this court in conformity with the provisions of N.J.S.A. 27:12B-7 to reach the sum of $60,357.07, which now comprises the condemnation award plus the accrued interest. In that manner the plaintiff concluded its participation in the condemnation proceedings.
The owners thereupon addressed a petition to the Passaic County Assignment Judge of the Superior Court essentially in quest of a judgment directing the payment of the entire deposit to them, but praying that a hearing be conducted upon proper notice to the tenants to adjudge and fix the respective interests, if any, of the latter in the deposited award.
To effectuate the object and purpose of the petition, an order was made by the court directing each of the tenants within the stated time "to file a petition in this cause setting forth in due form the amount and the basis of the claim which it will assert." Such was done and a hearing was conducted at which oral testimony was received. The trial judge disallowed the claims of both of the tenants and determined that the entire deposit belongs to the petitioning fee owners. The conformable judgment, from which both tenants here appeal, directs the clerk of the court to pay the entire deposit, less his legitimate deductions, to the owners. This was the path of procedure pursued in this instance. See N.J.S.A. 20:1-15; R.R. 4:92-10. We perceive no meritorious objection to the practice here adopted. It was in accord with due process.
Accurately to ascertain and determine the market value of the unexpired term of a leasehold interest in real property *314 taken by eminent domain is not ordinarily a simple task. One might well infer from the current scarcity of officially reported litigation anent the subject, in contrast with the modern increase in the number of condemnation proceedings, that the controversial occasions for such evaluations are relatively rare.
It is said now to be the common practice particularly in metropolitan areas to embody in leases of business properties a contractual provision applicable to the disposition of the proceeds of an award in the eventuality of the deprivation of the landlord's ownership of and the tenant's leasehold interest in the demised premises by eminent domain. 4 Nichols, Eminent Domain 180, § 12.42(3). Such engagements have been regarded as valid. 1 Orgel, Eminent Domain 524, § 121, note 88. This may be a contributing reason for the paucity of fresh decisions specifically addressed to this collateral and sometimes sequential branch of eminent domain workmanship.
For pragmatical purposes the one award of just compensation in obedience to constitutional and statutory requirements is formed to constitute a summation of all of the values of all of the separate interests in the property. Platt v. Bright, 31 N.J. Eq. 81 (Ch. 1879), affirmed sub nom. Bright v. Platt, 32 N.J. Eq. 362 (E. & A. 1880); Zimmerman v. Hudson & M.R. Co., 76 N.J.L. 251 (Sup. Ct. 1908); Daab v. Hudson County Park Commission, 77 N.J.L. 36 (Sup. Ct. 1908); Herr v. Board of Education, 82 N.J.L. 610 (E. & A. 1912); City of Newark v. Cook, 99 N.J. Eq. 527, 532 (Ch. 1926), affirmed 100 N.J. Eq. XXX-XXX-XXX-XXX (E. & A. 1927).
Certainly under our existing law a lessee is not accorded the initial right to have his tenancy separately and specifically evaluated in the condemnation award. Pennsylvania R. Co. v. National Docks, etc., Co., 57 N.J.L. 86 (Sup. Ct. 1894), affirmed 57 N.J.L. 457 (E. & A. 1894); Schill v. Board of Chosen Freeholders of Essex County, 98 N.J. Eq. 469 (Ch. 1926).
*315 Assuredly, too, since the one award as a whole is the equivalent of the total compensation to which all of those having relative interests in the property are adjudged to be entitled, justice dictates that the owner of each individual interest should receive from the award a proper divisional share of indemnity for his particular deprivation and loss, if any.
Conceivably the apportionment may implicate the security claims of mortgagees and other lienors, tax liens, right of dower, or of life tenant, remainderman, contractual vendees or owners of other future interests and, as here, the demands of the lessees.
Some informational illustrations are found in Bright v. Platt, 32 N.J. Eq. 362 (E. & A. 1880); Lehigh Coal & Navigation Co. v. Central R. Co. of New Jersey, 35 N.J. Eq. 379 (Ch. 1882); Gray v. Case, 51 N.J. Eq. 426 (Ch. 1893), anent mortgagees; In re Sleeper, 62 N.J. Eq. 67 (Ch. 1901); Borough of Edgewater v. Corn Products Refining Co., 136 N.J.L. 220 (Sup. Ct. 1947), modified 136 N.J.L. 664 (E. & A. 1948), anent tax liens; Bruten v. Miller, 28 N.J. Super. 531 (Ch. Div. 1953), anent dower; Brisbane v. Sullivan, 108 N.J. Eq. 305 (E. & A. 1931), anent life estate; Rappoport v. Crawford, 99 N.J. Eq. 669 (Ch. 1926), affirmed 100 N.J. Eq. 587 (E. & A. 1927); Thomson v. State Highway Commission, 10 N.J. Misc. 877 (Sup. Ct. 1932); Delancey & Stockton Corporation v. Reliable Imp. Co., 134 N.J. Eq. 71 (E. & A. 1943), anent vendee's interest. In general, see 1 Orgel, Eminent Domain 481, c. X.
In our jurisdiction, in the absence of a qualifying or contrary stipulation of the parties, the total deprivation of the tenant's possession and enjoyment of the demised premises by condemnation terminates the relationship of landlord and tenant. N.J.S.A. 46:8-7. The termination of the lease does not, however, prevent the tenant from asserting the value of his lease in the apportionment of the award. Board of Chosen Freeholders of Hudson County v. Emmerich, 57 N.J. Eq. 535 (Ch. 1898); City of Newark v. Cook, supra.
*316 Accordingly, in the apportionment proceedings the period of the unexpired term of the lease, the options, if any, therein to renew or of the landlord to terminate, the characteristics of the demised premises and the amount of the rent reserved assume particular relevancy. See, Hercey v. Board of Chosen Freeholders, 99 N.J. Eq. 525 (Ch. 1926), re option. But a tenant may not claim from the award damages for his loss of business, profits, good will, fixtures, cost of removal and the like. City of Newark v. Cook, supra; City of Newark v. Eisner, 100 N.J. Eq. 101 (Ch. 1926); vide, City of Trenton v. Lenzner, 29 N.J. Super. 514, 519, 520 (App. Div. 1954), affirmed 16 N.J. 465 (1954); American Salvage Co. v. Housing Authority of City of Newark, 14 N.J. 271 (1954): 3 A.L.R.2d 286.
The tenant's recoverable damage, if any, is ascertained and determined fundamentally by a comparison of the fair value of his leasehold interest and the rent reserved. City of Newark v. Cook, supra; City of Newark v. Eisner, supra. The burden descends upon the tenant to disclose by a fair preponderance of the evidence that the fair market value of his lease was greater than the rent reserved. City of Newark v. Eisner, supra. The mere proof that one holds a tenancy in the condemned premises is not sufficient ipso facto to prove that the tenant has suffered a compensable loss in consequence of his deprivation of possession. Proof of a loss is often difficult. Jahr, Law of Eminent Domain, pp. 190, 194, 198.
In the present instance, as normally, the interrogation of expert witnesses was pursued as a practicable medium of supplying the hypotheses by which the judge might be aided in determining the values of the respective leasehold interests. The responses of the experts were discordant and probably slanted favorably toward the interests of their respective clients. The measure of faith and trust to be reposed in the testimony of expert witnesses is preeminently the concern of the trier of the facts. In re Port of New York Authority, 28 N.J. Super. 575, 580 (App. Div. 1953).
*317 It must be acknowledged that in the exercise of our appellate function we are not privileged arbitrarily to substitute to or fro our estimate of the credibility of the testimony of the witnesses for that of the trial judge. We are instructed to accord due regard to the superior opportunity of the trial judge better to appraise its credibility. R.R. 1:5-4(b).
It is therefore in the illumination of all of the aforementioned considerations that the review of the present proceedings has been undertaken. It is to be recognized that the decision of the trial judge ultimately pivoted upon a determination of the basic facts. He resolved that neither tenant had sustained the burden of proving that the "rental value, due to location, is greater than the rent reserved."
It is not manifest, as appellants contend, that the trial judge confined his decision solely and exclusively to the consideration of the location of the demised premises. However, it may be said that the location of the demised premises may in such a proceeding be a fact of supreme significance in evaluating the worth of a leasehold interest. Certainly the location of the demised premises in relation to those represented to be comparable properties was a worthy subject of consideration in the present proceedings. The lessees were not narrowly restricted in this respect in the introduction of their evidence.
A recitation of the testimony conspicuously divergent, discordant, and irreconcilable in its import, tendencies and aptitude will not be undertaken here. Suffice to state that although we are empowered to make our own independent findings where the controversial issue is essentially factual, yet we are not disposed on appeal to overturn the conclusions of the trier of the facts unless it is our conviction that such conclusions are so manifestly unsupported by or inconsistent with the competent, relevant, and reasonably credible evidence as to offend the interests of justice. Koolvent Aluminum Awning Co. of New Jersey v. Sperling, 16 N.J. Super. 444, 447 (App. Div. 1951); Trusky v. Ford Motor Co., 19 N.J. Super. 100, 103, 104 (App. Div. *318 1952); Julius Reiner Corporation v. Sutton, 23 N.J. Super. 93, 96 (App. Div. 1952).
Lastly, the appellants impugn the denial of their application for counsel fees by the trial judge who expressed his belief that no fund in court existed within the meaning of R.R. 4:55-7(b). As stated by the Supreme Court in American Salvage Co. v. Housing Authority of City of Newark, 14 N.J. 271, on page 281 (1954), "* * * even if the deposit of the award created a fund in court assessable for counsel fees under Rule 3:54-7, now R.R. 4:55-7," we are not persuaded in the present case that the discretionary action of the trial judge aside from his announced reason was arbitrary or capricious.
Affirmed.